# UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

---

## NO. 23-20475

---

UNITED STATES OF AMERICA,
Plaintiff – Appellee
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, L.L.C.; GRAVITY CAPITAL, L.L.C.,
Movants – Appellants

---

*consolidated with*

---

## NO. 24-20039

---

UNITED STATES OF AMERICA,
Plaintiff
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, L.L.C.; GRAVITY CAPITAL, L.L.C.,
Movants – Appellants

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:21-CR-577-1
The Honorable David Hittner

**APPELLANTS GRAVITY FUNDING, LLC AND
GRAVITY CAPITAL, LLC'S PRINCIPAL BRIEF**

Rusty J. O'Kane
Texas State Bar No. 24088149
rusty.okane@wickphillips.com
Joseph R. Callister
Texas State Bar No. 24059054
joseph.callister@wickphillips.com
Justin G. Bates
Texas State Bar No. 24131246
justin.bates@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**Counsel for Appellants Gravity Funding,
LLC and Gravity Capital, LLC**

# UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

## NO. 23-20475

UNITED STATES OF AMERICA,
Plaintiff – Appellee
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, L.L.C.; GRAVITY CAPITAL, L.L.C.,
Movants – Appellants

*consolidated with*

## NO. 24-20039

UNITED STATES OF AMERICA,
Plaintiff
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, L.L.C.; GRAVITY CAPITAL, L.L.C.,
Movants – Appellants

## CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

Pursuant to FED. R. APP. P. 26.1 and 28, and 5TH CIR. R. 28.2.1, Appellants submit the following certificate of interested persons. The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**<u>Appellants</u>:**

Gravity Funding, LLC
Gravity Capital, LLC

**<u>Appellants' Trial and Appellate Counsel</u>:**

Rusty J. O'Kane
Joseph R. Callister
Megan E. Servage
Justin G. Bates
**Wick Phillips Gould & Martin, LLP**

**<u>Appellees</u>:**

E. Alan Tiras
E. Alan Tiras, P.C.

**<u>Appellees' Trial and Appellate Counsel</u>:**

Kenneth M. Krock
Matthew M. Buschi
Scott Seidl
**Rapp & Krock, PC**

**<u>Other parties which are financially interested in the outcome of the litigation</u>:**

United States of America.[1]

Additionally, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellants state that Gravity Capital, LLC owns 100% of Gravity Funding, LLC and no publicly held company owns any interest in either entity. Gravity Capital does not have a parent company.

*/s/ Justin G. Bates*
Justin G. Bates

---

[1] The Government moved to dismiss its appeal which the Clerk granted on January 26, 2024. ROA.24-20039.1013-1014.

---

## NO. 23-20475

---

UNITED STATES OF AMERICA,
Plaintiff – Appellee
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, LLC; GRAVITY CAPITAL, LLC,
Movants – Appellants

---

*consolidated with*

---

## NO. 24-20039

---

UNITED STATES OF AMERICA,
Plaintiff – Appellee
v.
SCOTT JACKSON DAVIS,
Defendant
and
E. ALAN TIRAS; E. ALAN TIRAS, P.C.,
Movants – Appellees
v.
GRAVITY FUNDING, LLC; GRAVITY CAPITAL, LLC,
Movants – Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe oral argument is necessary and beneficial to the Court's resolution of this Appeal. This Appeal concerns the District Court's factual and legal findings with respect to the priority of creditors in a complex criminal forfeiture proceeding. Oral argument is likely to provide additional context and allow the Court the opportunity to pose questions to counsel for the parties outside the confines of their respective briefing.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE
OF INTERESTED PERSONS ................................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................... v

TABLE OF CONTENTS .................................................................... vi

TABLE OF AUTHORITIES .............................................................. viii

I.      STATEMENT OF JURISDICTION ............................................. 1
II.     STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................. 1

    Issue 1:  Did Gravity Capital assert a valid claim to the subject
    property under Section 853(n)(3)?  If not, is Gravity Capital's
    misnomer curable? ............................................................................. 1
    Issue 2:  Does Gravity qualify as a *bona fide* lender under Section
    853(n)(6)(B) such that its secured lien remains valid and defeats
    the Government's forfeiture of the property? ................................... 2
    Issue 3:  Pursuant to Section 853(n)(6)(A), did Tiras's 2015
    judgment lien against Davis vest against the Tomball Property
    before Davis's PPP scheme in 2020 that gave rise to the property
    being forfeited in this action? ......................................................... 3
    Issue 4:  When disposing of Tiras's third-party petition, can the
    District Court uphold the Government's forfeiture and preserve
    Tiras's judgment lien against the property, or must the final
    forfeiture, if upheld, provide the Government with "clear title"? ................... 3

III.    STATEMENT OF THE CASE ..................................................... 4

    A. Introduction ................................................................................ 4
    B. Factual Background .................................................................... 5

       1. Davis fraudulently obtains PPP funds and the Trust
       purchases the Tomball Property ................................................. 5

       2. Davis and the Trust use the Tomball Property to obtain a
       secured "hard money" loan from Gravity .................................... 6

       3. The Government indicts Davis for obtaining fraudulent
       PPP funds and the forfeiture proceeding commences .................. 9

    4.   Tiras and the Government rely on Gravity to sell the Tomball Property during the forfeiture proceeding ..................................10

    5.   Gravity Capital presented evidence of its claim at the hearing and through post-hearing briefing ................................12

    6.   The District Court's orders and this Appeal........................................13

IV.    SUMMARY OF THE ARGUMENT ............................................................16
V.    APPELLANTS' ARGUMENT ....................................................................17

    A.  First Issue:  the District Court incorrectly held that Gravity Capital failed to assert a claim to the Tomball Property and refused to grant leave for Gravity to amend and cure the misnomer ........................................................................................18
    B.  Second Issue:  Gravity established *bona fide* lender status sufficient to evade forfeiture of the Tomball Property............................26
    C.  Third Issue:  The District Court erred in holding that Tiras had a forfeiture-exempt interest in the Tomball Property..............................31
    D.  Fourth Issue:  the District Court erred by preserving Tiras's interest in the Tomball Property despite forfeiting it to the Government ..................................................................................34

VI.    CONCLUSION AND PRAYER ..................................................................36

CERTIFICATE OF SERVICE ............................................................................38

CERTIFICATE OF COMPLIANCE ....................................................................39

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abest Holdings, LLC v. Fort Worth Mar-G, Ltd.*,
  No. 10-18-00161-CV, 2021 WL 2252351 (Tex. App.—Waco June 2, 2021, no
  pet.) ..................................................................................................................27
*Chen v. Breckenridge Estates Homeowners Ass'n, Inc.*,
  227 S.W.3d 419 (Tex. App.—Dallas 2007, no pet.) ..........................................24
*Cybiz, Inc. v. Gaskill*,
  No. 14-16-00405-CV, 2017 WL 1015560 (Tex. App.—Houston [14th Dist.]
  Mar. 14, 2017, no pet.) ......................................................................................20
*Davoodi v. Austin Ind. Sch. Dist.*,
  755 F.3d 307 (5th Cir. 2014) .............................................................................25
*Exxon Mobil Corp. v. Rincones*,
  520 S.W.3d 572 (Tex. 2017) ..............................................................................20
*Fewell v. Republic Nat'l. Bank of Dallas*,
  513 S.W.2d 596 (Tex. App.—Eastland 1974, writ ref'd n.r.e.) ..........................34
*Gaona v. Gonzales*,
  997 S.W.2d 784 (Tex. App.—Austin 1999, no pet.)...........................................32
*Grandey v. Pac. Indem. Co.*,
  217 F.2d 27 (5th Cir. 1954) ...............................................................................20
*In re Bradley*,
  501 F.3d 421 (5th Cir. 2007) .............................................................................32
*In re Chambers*,
  384 B.R. 460 (Bankr. E.D. Tex. 2008)...............................................................34
*In re City Nat'l Bank*,
  257 S.W.3d 452 (Tex. App.—Tyler 2008, no pet.).............................................28
*In re Goff*,
  812 F.2d 931 (5th Cir. 1987) ....................................................................... 32, 33
*In re Greater Houston Orthopedic Spec., Inc.*,
  295 S.W.3d 323 (Tex. 2009) ..............................................................................20
*In re Harydzak*,
  406 B.R. 499 (Bankr. S.D. Tex. 2009)...............................................................28
*In re Moody*,
  827 F.2d 719 (5th Cir. 1988) .............................................................................32

*Jackson v. Duke*,
   259 F.2d 3 (5th Cir. 1958) ...............................................................20

*Matter of Shurley*,
   115 F.3d 333 (5th Cir. 1997) ............................................................33

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Razzouk*,
   No. 1:18-MC-1793 (ARR), 2018 WL 4210137 ................................36

*Noble Mortg. & Inv., LLC v. D & M Vision Inv., LLC*,
   340 S.W.3d 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.).........28

*Pierson v. SMS Fin. II, L.L.C.*,
   959 S.W.2d 343 (Tex. App.—Texarkana 1998, no pet.) ...................21

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ............................................................25

*United States v. Alvarez*,
   710 F.3d 565 ......................................................................................22

*United States v. Armstrong*,
   No. 05-130, 2007 WL 7335173 (E.D. La. June 1, 2007)...................28

*United States v. Brewer*,
   591 F.Supp.2d 864 (N.D. Tex. 2008) ................................................27

*United States v. Butt*,
   930 F.3d 410 (5th Cir. 2019) ............................................................25

*United States v. Daugerdas*,
   892 F.3d 545 (2d Cir. 2018) .............................................................23

*United States v. Dong Dang Huynh*,
   595 Fed. Appx. 336 (5th Cir. 2014) ..................................................18

*United States v. Fisch*,
   851 F.3d 402 (5th Cir. 2017) ............................................................17

*United States v. Furando*,
   40 F.4th 567 (7th Cir. 2022) ................................................ 1, 22, 24

*United States v. Galemmo*,
   661 Fed. Appx. 294 (6th Cir. 2016) ..................................................30

*United States v. Hall*,
   877 F.3d 676 (6th Cir. 2017) .................................................... 34, 36

*United States v. Hentz*,
   No. C.R.A. 90-00276-03, 1996 WL 355327 (E.D. Pa. June 20, 1996) ..............35

*United States v. Herbawi*,
   972 F. Supp. 171 (W.D.N.Y. 1997) ..................................................28

*United States v. Holy Land Found. for Relief and Dev.*,
   493 F.3d 469 (5th Cir. 2007) .................................................... 21, 35

*United States v. Huntington Nat'l Bank*,
   682 F.3d 429 (6th Cir. 2012) ............................................................27

*United States v. Koeln*,
　No. 4:19-CR-1016 RLW, 2022 WL 93387 (E.D. Mo. Jan. 10, 2022)................25
*United States v. Lamid*,
　663 Fed. Appx. 319 (5th Cir. 2016) ............................................ 21, 22
*United States v. McCorkle*,
　143 F.Supp.2d 1311 (M.D. Fla. 2001) ...................................... 27, 30
*United States v. Messino*,
　122 F.3d 427 (7th Cir. 1997) .............................................................36
*United States v. Olguin*,
　643 F.3d 384 (5th Cir. 2011) ..................................................... 17, 18
*United States v. Patel*,
　No. 16-CR-00584-02 (DRH), 2019 WL 3216654 (E.D. N.Y. July 19, 2019)....25,
　26
*United States v. Quality Stores, Inc.*,
　572 U.S. 141 (2014) ............................................................................21
*United States v. Reckmeyer*,
　836 F.2d 200 (4th Cir. 1987) .................................................... 24, 29
*United States v. Sanchez*,
　No. 22-11923, 2023 WL 5844958 (11th Cir. Sept. 11, 2023) ............................23
*United States v. Stone*,
　304 Fed. Appx. 334 (5th Cir. 2008) ................................................25
*United States v. Swartz Family Tr.*,
　67 F.4th 505 (2d Cir. 2023) ...................................................... 22, 24
*United States v. Timley*,
　507 F.3d 1125 (8th Cir. 2007) .........................................................29
*United States v. White*,
　306 Fed. Appx. 838 (5th Cir. 2007) .......................................... 28, 31
*Wils v. Robinson*,
　934 S.W.2d 774 (Tex. App.—Houston [14th Dist.] 1996) .................................24
*Wise v. Conklin*,
　No. 01-13-00840-CV, 2015 WL 1778612 (Tex. App.—Houston [1st Dist.] Apr.
　16, 2015, no pet.) ..............................................................................32

Statutes

18 U.S.C. §§ 981, 982, 1343, 1344, and 1957 ..........................................1
21 U.S.C. § 853(a)(1)..................................................................... 14, 35
21 U.S.C. § 853(n) ....................................................................... passim
21 U.S.C. § 853(n)(2)................................................................. 19, 21, 22, 23
21 U.S.C. § 853(n)(6)(A)-(B) ........................................................ passim

21 U.S.C. § 853(o) ............................................................ 18, 22

21 USC § 853(n)(7) ...................................................... passim

28 U.S.C. § 1291 ...................................................................1

Texas Property Code Section 13.001 ........................ 27, 28

Section 853(n)(3) ........................................................ passim

Section 853(n)(6)(B) ................................................... passim

TEX. PROP. CODE § 52.001 ...................................................31

TEX. PROP. CODE § 112.035(d) ...........................................34

Rules

FED. R. APP. P. 26.1 and 28 ...............................................i, iii

FED. R. APP. P 32(a)(7)(B) .................................................39

FED. R. APP. P 6(b)(1) ........................................................21

FED. R. APP. P 10(c) ...................................................... 25, 26

Other Authorities

3 FED. PRAC. & PROC. CRIM. § 574 (5th ed. 2023) ...............35

5A FED. PRAC. & PROC. CIV. § 1327 (4th ed. 2023) .............26

UCC § 2-403 .......................................................................27

# I.
## STATEMENT OF JURISDICTION

This Appeal concerns an ancillary forfeiture proceeding under 21 U.S.C. § 853(n) stemming from criminal charges brought against Scott Jackson Davis ("Davis") pursuant to 18 U.S.C. §§ 981, 982, 1343, 1344, and 1957, which vested the District Court with original jurisdiction. On January 18, 2024, the District Court entered an Amended Final Order of Forfeiture in favor of the Government and against Gravity Funding, LLC and Gravity Capital, LLC (together, "Appellants" or "Gravity") and Appellees E. Alan Tiras and E. Alan Tiras, P.C. (together, "Appellees" or "Tiras") (though Tiras's interest was partially preserved). Gravity filed an Amended Notice of Appeal on January 24, 2024. This Court has jurisdiction to hear this Appeal pursuant to 28 U.S.C. § 1291. *United States v. Furando*, 40 F.4th 567, 575 (7th Cir. 2022) ("An appeal after a district court's decision regarding ancillary proceedings under 21 U.S.C. § 853(n), is sound as a final judgment under 28 U.S.C. § 1291.").

# II.
## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**<u>Issue 1</u>: Did Gravity Capital assert a valid claim to the subject property under Section 853(n)(3)? If not, is Gravity Capital's misnomer curable?**

The criminal forfeiture statute, 21 U.S.C. § 853(n)(3), requires that a third-party asserting an interest in forfeited property file a petition setting "forth the nature and extent of the petitioner's right, title, or interest in the property" and the

"circumstances of the petitioner's acquisition of the right, title, or interest in the property." Gravity filed its petition by the noticed deadline and included verified facts and attached loan documents establishing that Gravity *Capital* made a loan in 2021 to a trust controlled by the Defendant Scott Davis and obtained a security interest in the subject property. The petition, however, mistakenly referred to Gravity *Funding* in the petition's caption and opening sentence, although Gravity *Capital* obtained the relevant lien. Likewise, Gravity *Capital* appeared at the evidentiary hearing, addressed the Gravity Funding misnomer, and again presented evidence of its lien in the property. The Government and Alan Tiras—the other parties asserting interests in the subject property—were fully aware of Gravity Capital's lien throughout the proceeding, even authorizing Gravity Capital to market and sell the property on behalf of the three parties, and did not raise any issue about the Gravity Funding misnomer until their final post-trial briefs.

**Issue 2: Does Gravity qualify as a *bona fide* lender under Section 853(n)(6)(B) such that its secured lien remains valid and defeats the Government's forfeiture of the property?**

21 U.S.C. § 853(n)(6)(B) codifies the bona fide purchaser and lender protections into the criminal forfeiture statute, providing that a third party who loans funds against subsequently forfeited property, without notice that the property might be subject to forfeiture, prevails against the Government's forfeiture of the property as a bona fide lender. Gravity finalized a loan to Davis's trust in February 2021, ten

months before Davis was indicted, secured by the subject property and without actual or constructive notice that Davis used fraudulently obtained Paycheck Protection Program ("PPP") funds to purchase the property.

**Issue 3**: Pursuant to Section 853(n)(6)(A), did Tiras's 2015 judgment lien against Davis vest against the Tomball Property before Davis's PPP scheme in 2020 that gave rise to the property being forfeited in this action?

Under 21 U.S.C. § 853(n)(6)(A), a third party whose interest in property vested before the criminal wrongdoing giving rise to the Government's subsequent forfeiture of the property overcomes over the Government's forfeiture. Based on prior misconduct unrelated to this action, Tiras obtained a Nevada judgment against Davis in 2015 and then domesticated this judgment lien in Texas. In 2020, Davis fraudulently obtained PPP funds, which he used to purchase the subject property on behalf of a trust. Tiras's 2015 judgment did not list the trust as a judgment debtor and was not recorded against the Tomball property (which the trust did not purchase for another five years).

**Issue 4**: When disposing of Tiras's third-party petition, can the District Court uphold the Government's forfeiture <u>and</u> preserve Tiras's judgment lien against the property, or must the final forfeiture, if upheld, provide the Government with "clear title"?

21 USC § 853(n)(7) provides that if a district court upholds the Government's forfeiture of property against the claims of third parties, then the Government "shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee."

# III.
# STATEMENT OF THE CASE

## A.    Introduction

This Appeal concerns Gravity and Tiras's competing claims under the forfeiture statute to certain real property forfeited by the United States (the "Government") pursuant to a criminal action against Davis for fraudulently obtaining PPP funds. Davis obtained the federal PPP funds in 2020, used the funds to purchase the subject property in Tomball, Texas (the "Tomball Property"), and then used the Tomball Property as collateral to finance a hard money loan from Gravity in early 2021. The Government indicted Davis for the PPP fund scheme in late 2021 and quickly conducted a preliminary criminal forfeiture of the Tomball Property (and Davis' other known assets).

After receiving notice of the forfeiture action, Gravity and Tiras filed third-party petitions asserting interests in the Tomball Property pursuant to 21 U.S.C. § 853(n). Gravity's Petition included loan documents, including a recorded deed of trust, establishing that Gravity Capital perfected a lien against the Tomball Property in February 2021—over ten months before Davis was indicted—but mistakenly listed "Gravity Funding," an affiliated entity controlled by the same officers, in the Petition's caption and opening paragraph. Tiras also asserted an interest in the Tomball Property based on a 2015 judgment lien against Davis that resulted from an

unrelated scheme in Nevada, but this judgment lien only extended to Davis, not the trust or Tomball Property.

Based solely on this mistaken reference to Gravity Funding, the District Court determined that Gravity did not assert a valid claim (without ruling on Gravity's *bona fide* lender claim under Section 853(n)(6)(B)), upheld the Government's forfeiture of the Tomball Property, and partially preserved Tiras's judgment lien.

## B.    Factual Background

### 1.    Davis fraudulently obtains PPP funds and the Trust purchases the Tomball Property.

The relevant fraudulent scheme that gives rise to this Appeal began when Davis formed the Texas Star 2019 Capital Revocable Living Trust on or about November 1, 2019 (the "Trust"). ROA.24-20039.543-548. Davis was the Grantor and Co-Trustee of the Trust, along with his then-girlfriend, Sandra Ramirez. ROA.24-20039.543. While Davis was a named beneficiary, the Trust also named a successor beneficiary, Spencer Winston Ruby. ROA.24-20039.543. The Trust also contained a "spendthrift" provision. ROA.24-20039.546.

In May of 2020, Davis received three PPP loans from the Small Business Administration totaling $1,150,000. ROA.24-20039.1187:10-16. The Trust then proceeded to use these funds to purchase the Tomball Property located at 23226 Oak Hollow Lane, Tomball, Texas 77377. ROA.24-20039.1188:11-18. The Tomball

Property was acquired and titled in the name of the Trust, with the Trust being the record legal owner of the Property, not Davis. ROA.24-20039.1189:20-24.

### 2. Davis and the Trust use the Tomball Property to obtain a secured "hard money" loan from Gravity.

After securing ownership of the Tomball Property for the Trust, Davis then used it as collateral to defraud a new victim—Gravity—by seeking a secured loan against the property. Gravity is a Utah-based "hard money" lender offering alternative funding to persons who may not otherwise qualify for a conventional bank loan. ROA.24-20039.1245:18-23. Because its borrowers are higher risk than conventional borrowers, Gravity will not loan them money unless it receives a first priority lien in collateral whose title has been vetted and insured by a title company. ROA.24-20039.1246:6-10.

In early 2021, Gravity was approached by a loan broker who represented that Davis was in the market to borrow money to fix up the Tomball Property. ROA.24-20039.1246:19-23. Gravity did not know Davis and had done no business with he or the Trust before this time. ROA.24-20039.1247:3. Gravity performed due diligence pursuant to its internal loan process into the Tomball Property and Davis's borrowing profile, including: (i) sending a realtor to the Tomball Property to provide a professional opinion as to its value (ROA.24-20039.1247:5-8); (ii) reviewing a prior appraisal of the Tomball Property (ROA.24-20039.1247:9-11); (iii) having Gravity's President, Dave Knudson, personally inspect the property (ROA.24-

20039.1247:23-24); (iv) obtaining title insurance that insured the Trust's ownership of the property (ROA.24-20039.1248:24-25); (v) running a credit report on Davis, individually (ROA.24-20039.1254:12-13; ROA.24-20039.675-676); and (vi) receiving and reviewing financial statements provided by Davis. ROA.24-20039.1256:4-9.

Gravity's title insurer, Texan Title Insurance Company ("TTIC") issued a Loan Policy of Title Insurance regarding the Tomball Property on February 10, 2021. ROA.24-20039.659-669. Following its title examination, TTIC confirmed title to the Tomball Property was "vested in" the Trust:

> 3. **Title is insured as vested in:**
> Scott J. Davis and Sandra Leigh Ramirez, Co-Trustees of the Texas Star 2019 Capital Revocable Trust dated November 10, 2019

ROA.24-20039.665 (emphasis in original).

On its Commitment for Title Insurance, TTIC further verified that it searched the Tomball Property and Davis individually for judgment liens and other potential clouds on title, but found none (including Tiras's judgment lien):

> NOTE TO CLOSER: The proposed purchasers/borrowers in the present transaction, Scott J. Davis, have been checked for the existence of TEXAS WORKFORCE COMMISSION LIENS, FEDERAL JUDGMENT LIENS IN FAVOR OF THE UNITED STATES OR AN AGENT THEREOF, U.S. BANKRUPTCY PROCEEDINGS AND DEPARTMENT OF JUSTICE LIENS. They have been checked for other abstracts of judgment, federal tax liens or any other adverse matter, but additional checks may be performed upon request.

ROA.24-20039.1251:15-23. Gravity's president testified that the company would not have approved the loan if TTIC had discovered Tiras's judgment lien against Davis. ROA.24-20039.1254:4-5.

With TTIC confirming there were no existing liens against the Tomball Property or Davis, Gravity agreed to extend a $1 million "line of credit" to the Trust, memorialized by a Business Loan Agreement, Promissory Note, Loan Guaranty (from Davis), and related loan documents (together, the "Loan"). ROA.24-20039.1264:2-6; ROA.24-20039.103-119; ROA.24-20039.121-23; ROA.24-20039.141-145. Gravity and the Trust also executed a Commercial Deed of Trust, Security Agreement Financing Statement and Assignment of Rents (the "Deed of Trust"), wherein the Trust granted Gravity Capital a security interest in the Tomball Property, which Gravity recorded with the Harris County Clerk against the Tomball Property on February 10, 2021. ROA.24-20039.125-139; ROA.24-20039.98; ROA.24-20039.1258:1-12. Davis warranted in the Deed of Trust that the Trust "holds good and indefeasible title of record to the Property in fee simple, free and clear of all liens and encumbrances . . ." ROA.24-20039.131.

Prior to issuing the Loan, Gravity had no actual or constructive knowledge that Davis was being investigated for PPP fraud and that the Tomball Property may be subject to forfeiture. ROA.24-20039.1258:13-1259:2.

8

Gravity funded the first loan tranche of $260,000 and subsequently funded an additional $100,000 several months later, providing a total of $360,000 in loan principal. ROA.24-20039.1257:4-13. The Trust and Davis never made any payments on the Loan and Gravity provided written notice of default. ROA.24-20039.99.

### 3. The Government indicts Davis for obtaining fraudulent PPP funds and the forfeiture proceeding commences.

Unbeknownst to Gravity, Davis was indicted by the Government on or about December 8, 2021 for, *inter alia*, fraudulently acquiring and utilizing PPP funds. ROA.24-20039.24-36. Davis was ultimately sentenced to prison for 78 months. ROA.24-20039.274.

The forfeiture proceeding began on May 31, 2022, with the filing of the Government's Motion for Preliminary Order of Forfeiture. ROA.24-20039.80-83. On June 2, 2022, the District Court entered a Preliminary Order of Forfeiture as to various property owned by Davis, including the Tomball Property. ROA.24-20039.88-91. In July of 2022, Gravity and Tiras filed third-party petitions asserting interests in the Tomball Property.

Tiras had previously obtained a Nevada judgment against Davis (and others) based on an unrelated dispute with Davis, which Tiras abstracted and recorded in Harris County, Texas in August 2015. ROA.24-20039.515-523. The "Judgment Debtors" listed on Tiras's Abstract of Judgment are: (i) "Sandra Leigh Ramirez p/k/a Sandra L. Huston;" (ii) "Scott J. Davis;" and (iii) "Oceanwater Consultants LLC."

ROA.24-20039.177. Tiras's judgment lien was never recorded against the Trust or attached to the Tomball Property. ROA.24-20039.1224:1-22.

Gravity filed its Petition and Claim to Property on July 14, 2022. ROA.24-20039.96-153. Gravity's Petition mistakenly listed the name Gravity Funding, not Gravity Capital, on the Petition's case caption and opening sentence, where "Gravity" is defined. ROA.24-20039.96; ROA.24-20039.1034. The Petition also attached the Loan documents, including the Deed of Trust, which clearly establish that Gravity Capital: (1) made the Loan to the Trust, and (2) obtained a valid security interest against the Tomball Property in connection with the loan. ROA.24-20039.103-145.

### 4. Tiras and the Government rely on Gravity to sell the Tomball Property during the forfeiture proceeding.

Throughout the forfeiture proceeding, the Government and Tiras clearly understood that Gravity Capital was asserting interests in the Tomball Property based on its recorded lien under the Deed of Trust. While the forfeiture action was pending, Gravity, the Government, and Tiras agreed that it would be in all of their interests to sell the Tomball Property immediately rather than waiting for the Court to resolve their competing claims to the property. ROA.24-20039.1035. As a result, the three parties filed an Agreed Motion for Interlocutory Sale of Property to the District Court on May 18, 2021. ROA.24-20039.282-288. The District Court granted this motion on May 6, 2023, holding that the three parties were authorized to sell the

property "pursuant to sale terms and a process agreed to by all Movants" and that any resulting sale proceeds would be held in trust pending resolution of the forfeiture action. ROA.24-20039.308. After entry of this order, the Government and Tiras agreed that Gravity would take responsibility to market and sell the property on behalf of all three parties. ROA.24-20039.1035.

Gravity took this obligation seriously, engaging a real estate broker to market the Tomball Property, handling all contracts and amendments, working with the title companies on numerous title issues, and working to resolve several significant problems that threatened to undermine potential sales. ROA.24-20039.1035-1036. At the Government and Tiras's direction, Gravity entered into purchase and sale contracts with two willing buyers (due to the first buyer falling through), with Gravity Capital listed as the seller on both contracts. ROA.24-20039.1035.

This sale process encountered several major obstacles that delayed and nearly blocked the parties' ability to sell the property. The first buyer backed out because the ongoing forfeiture proceeding created ongoing delays affecting the ability to close. ROA.24-20039.1035. Gravity's broker found a second buyer at even better sale terms and, again at the direction of the Government and Tiras, Gravity Capital entered into a sale contract with this buyer. ROA.24-20039.1035. When this second buyer threatened to back out when his title company refused to insure title to the property, Gravity was able to locate a new title company, Rise Title, who was the

only major title company in Texas willing insure the Tomball Property, based on very specific conditions. ROA.24-20039.1036.

Gravity's counsel and broker worked tirelessly with Rise Title to satisfy the buyer's conditions and resolve several obstacles to the sale closing. ROA.24-20039.1036. Shortly before the scheduled closing date with the second buyer, the Holly Creek Homeowner's Association ("HOA") filed a large lien against the Tomball Property with the Harris County Clerk, outside of the forfeiture action. ROA.24-20039.1036. Without any assistance from Tiras or the Government, Gravity negotiated a resolution with the HOA to accept a significantly reduced amount in return for releasing its lien. ROA.24-20039.1036-1037.

In the end, Gravity successfully marketed and sold the Tomball Property on behalf of Gravity, the Government, and Tiras, engaging a broker to market the property, entering into two contracts with potential buyers, working with two different title companies to resolve various title issues, resolving the HOA's eleventh hour lien, and ensuring the sale closed. ROA.24-20039.1037. Pursuant to the District Court's order, the sale proceeds were deposited into an account controlled by the Government, where they remain. They would not be there but for Gravity's efforts.

**5.** **Gravity Capital presented evidence of its claim at the hearing and through post-hearing briefing.**

In addition to submitting the Deed of Trust and other evidence of its lien in the Property with its Petition, Gravity established these facts at the forfeiture hearing

and in through its post-hearing brief. At the evidentiary hearing on July 6, 2023, Gravity Capital appeared, presented concrete evidence showing it was a *bona fide* lender with respect to the Tomball Property, and offered testimony explaining that Gravity Capital possessed the relevant lien (not Gravity Funding). ROA.24-20039.1171; ROA.24-20039.1175:22-24.

The Government and Tiras did not assert any objections based on the Gravity Funding issue at the hearing and instead attacked Gravity's standing for the first time in their post-hearing briefs, knowing that Gravity would have no opportunity to respond. ROA.24-20039.623. In its post-hearing brief, Gravity again presented evidence establishing Gravity Capital's valid lien in the Tomball Property and standing as a *bona fide* lender. Gravity also asked that the District Court "deny the government's [post-hearing] objection and permit Gravity to proceed with its Petition and claim under the correct entity name, Gravity Capital, LLC." ROA.24-20039.655. Gravity's post-hearing brief included a Supplemental Declaration from Gravity's President, who again attested that "Gravity Capital is the correct petitioner in this forfeiture proceeding . . ." ROA.24-20039.767.

### 6.    The District Court's orders and this Appeal.

The District Court entered its Preliminary Order of Forfeiture on August 1, 2023 (the "Preliminary Order"). ROA.24-20039.795-806. As to Tiras's claim, it found that the Tomball Property was "subject to forfeiture under 21 U.S.C. §

853(a)(1)," but also granted Tiras's petition "to the extent their interest is preserved in the event of any sale of the Tomball Property." ROA.24-20039.802-803.

As to Gravity, the District Court found Gravity Funding had no "basis to make a claim under 21 U.S.C. § 853(n)" because Gravity Capital was the entity with the interest in the Tomball Property and it did not file "a third-party petition under § 853(n) on its own behalf." ROA.24-20039.804. The District Court failed to address whether Gravity qualified as a *bona fide* lender under Section 853(n)(6)(B). Accordingly, the District Court deemed the Tomball Property subject to forfeiture with respect to Gravity's claim. ROA.24-20039.805.

The Government and Gravity filed respective Notices of Appeal from the Preliminary Order on September 29, 2023. ROA.24-20039.859-862. The same day, this Court opened Case No. 23-20475 thereafter (the "First Appeal"). On November 27, 2023, the District Court entered a Final Order of Forfeiture (the "Final Order"). ROA.24-20039.976-980. In the Final Order, the District Court again held "[n]either Gravity Funding nor Gravity Capital, LLC, had any basis to make a claim under 21 USC 853(n)" and that "Gravity Funding and Gravity Capital, LLC shall take nothing." ROA.24-20039.978. It then ordered forfeiture of the Tomball Property to the Government but found that Tiras was entitled to payment from any sale thereof. ROA.24-20039.978-979.

Tiras subsequently moved to amend the Final Order on December 22, 2023, asserting that clarity was needed to show that "Tiras is to partially release his abstract as an encumbrance on the Property only as part of a sale (as opposed to the proceeds of the sale of the Property)." ROA.24-20039.986 (emphasis in original). On January 18, 2024, the District Court granted Tiras' Motion to Amend and entered an Amended Final Order of Forfeiture, which again found that "[n]either Gravity Funding nor Gravity Capital, LLC, had any basis to make a claim under 21 USC 853(n)" and that "Gravity Funding and Gravity Capital, LLC shall take nothing." ROA.24-20039.998.

Gravity thereafter filed an Amended Notice of Appeal from the Amended Final Order (ROA.24-20039.1002-1005) which resulted in this Court opening Case No. 24-20039 (the "Second Appeal"). The Government filed a motion to withdraw and dismiss its appeal on January 25, 2024, leaving Gravity as the sole appellant. ROA.24-20039.1013-1014. On February 16, 2024, Gravity filed a Motion to Modify or Amend the Final Forfeiture Order, and/or for Relief from the Final Forfeiture Order, which the District Court denied on April 18, 2024. ROA.24-20039.1020-1108.

Gravity submitted an unopposed Motion to Consolidate the First Appeal with the Second Appeal on March 1, 2024, which the Clerk granted on March 6, 2024. ROA.24-20039.1123-1124.

## SUMMARY OF THE ARGUMENT

The District Court erred in ruling that (1) Gravity Capital failed to assert a valid claim against the Tomball Property, and (2) Tiras's judgment lien had attached to the property and would be preserved in connection with the Government's final forfeiture of the property.

Gravity Capital submitted evidence of its perfected security interest in the Tomball Property at every stage of the District Court proceedings—in Gravity's initial third-party Petition, at the forfeiture hearing, and in its post-hearing brief. Gravity addressed its mistaken reference to Gravity Funding through sworn testimony at the hearing and in its post-hearing brief. The misnomer did not prejudice the Government or Tiras's ability to litigate their claims to the Tomball Property. Indeed, the Government and Tiras were fully aware that Gravity Capital claimed an interest in the property as a *bona fide* lender, even authorizing Gravity and its agents to market and sell the Tomball Property on behalf of the three parties while the forfeiture action was pending. Further, the Government and Tiras never objected to the misnomer until the conclusion of the case when the parties simultaneously filed post-hearing briefs, knowing Gravity would have no time to respond and address the issue.

The District Court summarily denied Gravity's third-party petition based only on the Gravity Funding misnomer, overlooking the petition's extensive evidence

confirming Gravity Capital's secured lien, refusing to assess Gravity's standing as a *bona fide* lender under the forfeiture statute, and denying Gravity leave to amend to cure the technical misnomer. This was error.

When Gravity's claim is properly considered, the evidentiary record shows that Gravity submitted more than sufficient evidence of Gravity Capital's secured claim to the property and status as a *bona fide* lender under Section 853(n)(6)(B). In contrast, Tiras's 2015 judgment lien against Davis does not satisfy Section 853(n)(6)(A) because it was not vested in the Tomball property at the time of Davis's relevant misconduct in 2020. Further, Tiras's judgment lien was recorded against Davis, individually, and did not, as a matter of law, attach to the Tomball Property. Moreover, once the District Court ruled that Tiras's interest in the Tomball Property was subject to forfeiture, Tiras's judgment lien should have been extinguished under Section 853(n)(7).

Gravity's issues should be sustained and the District Court's Order(s) reversed and remanded for further consideration.

## V.
## APPELLANTS' ARGUMENT

A district court's legal conclusions "as to the propriety of a forfeiture order" are reviewed *de novo*. *United States v. Olguin*, 643 F.3d 384, 395 (5th Cir. 2011). Factual findings, by contrast, are reviewed for clear error. *United States v. Fisch*, 851 F.3d 402, 412 (5th Cir. 2017). Considering 21 U.S.C. § 853(n) is the only

procedural vehicle available to an aggrieved party to protect their interest in property subject to criminal forfeiture, it is to "be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(o); *United States v. Olguin*, 643 F.3d 384, 396 (5th Cir. 2011) ("The language of the statute is decidedly broad, and we keep this breadth in mind while examining caselaw that has interpreted the CFA."); *see also United States v. Dong Dang Huynh*, 595 Fed. Appx. 336, 339 (5th Cir. 2014) (not designated for publication under 5TH CIR. R. 47.5) ("§ 853(n)(6) sets out the exclusive ways in which a third party may obtain relief from a criminal-forfeiture order.").

A.    **First Issue: the District Court incorrectly held that Gravity Capital failed to assert a claim to the Tomball Property and refused to grant leave for Gravity to amend and cure the misnomer.**

The District Court held that because Gravity *Funding* filed the forfeiture petition, Gravity *Capital* failed to timely assert an interest in the Tomball Property. ROA.24-20039.804-805. However, the District Court simultaneously recognized that the "supporting documentation" attached to Gravity's third-party petition demonstrated that Gravity Capital did, in fact, have an interest in the Tomball Property. ROA.24-20039.804. Thus, in acknowledging that Gravity attached supporting documentation evidencing Gravity Capital's secured lien in the Tomball Property, the District Court should have held that Gravity Capital submitted a valid claim under Section 853(n)(3). Instead, the District court wholly refused to consider Gravity's petition, which was error. ROA.24-20039.804.

21 U.S.C. § 853(n)(2) allows "[a]ny person . . . asserting a legal interest in property which has been ordered forfeited to the United States [to] . . . within thirty days . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Subsection (n)(3) requires the petition to "be signed by the petitioner under penalty of perjury and . . . set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."

Gravity's Petition clearly set forth Gravity Capital's "right, title, or interest" in the Tomball Property and "the time and circumstances" of when this interest was acquired. Specifically, the Petition describes, references, and attaches loan documents establishing that Gravity Capital made a loan to Davis's Trust in early 2021, with the Deed of Trust providing Gravity Capital with a security interest in the Tomball Property, which was properly recorded and perfected. ROA.24-20039.96-153. While the Petition's caption and opening sentence mistakenly referenced Gravity Funding rather than Gravity Capital, the attached loan documents unambiguously establish that Gravity Capital obtained and perfected its lien in the property in connection with the Loan. Further, Gravity Capital presented evidence confirming "the time and circumstances" it acquired this lien and clarified the Gravity Funding misnomer when appearing at the evidentiary hearing and through its post-

hearing brief. As a result, Gravity more than satisfied Section 853(n)(3)'s requirements and Gravity Capital's claim was properly before the District Court.

In any event, Gravity should have been granted leave to cure the misnomer. "A misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *In re Greater Houston Orthopedic Spec., Inc.*, 295 S.W.3d 323, 325 (Tex. 2009). "The effect of a misnomer is governed by the Federal Rules of Civil Procedure" and "[c]ourts generally allow parties to correct a misnomer"— even at trial—"so long as it is not misleading." *Id*. at 325; *Jackson v. Duke*, 259 F.2d 3, 7 (5th Cir. 1958) ("Since the right party was before the court, although under a wrong name, the trial judge properly allowed the amendment to cure the misnomer."); *Grandey v. Pac. Indem. Co.*, 217 F.2d 27, 29 (5th Cir. 1954) (holding the defendant "should not be permitted to take advantage of a mere misnomer that injured no one, and the district court erred in refusing to permit the amendment of the summons and of the complaint and in dismissing the action."); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 594 (Tex. 2017).

Further, when the plaintiff misnames itself, "the rationale for flexibility in the typical misnomer case—in which the plaintiff misnames the defendant—applies with even greater force." *Id*. at 326; *see also Cybiz, Inc. v. Gaskill*, No. 14-16-00405-CV, 2017 WL 1015560, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 14, 2017, no

pet.) ("A plaintiff misnaming itself is generally a misnomer."); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.—Texarkana 1998, no pet.) (same).

The straightforward rationale for allowing a plaintiff to correct a simple misnomer is not usurped by 21 U.S.C. § 853(n). The starting point is the statutory text. *United States v. Quality Stores, Inc.*, 572 U.S. 141, 145 (2014). "The criminal forfeiture statute is designed to balance the government's interest in efficient and orderly prosecution with the rights of defendants and third parties who claim an interest in forfeitable property." *United States v. Holy Land Found. for Relief and Dev.*, 493 F.3d 469, 477 (5th Cir. 2007).

True, this Court requires "strict compliance" with Section 853(n)(3) and has prohibited amendment outside Section 853(n)(2)'s 30-day window. *United States v. Lamid*, 663 Fed. Appx. 319, 323 (5th Cir. 2016) (not designated for publication under 5TH CIR. R. 47.5). But *Lamid* is not binding precedent and dealt with materially different facts involving whether the son of his defrauded mother had authority to assert her forfeiture claim based on an invalid power of attorney under Louisiana law. *Id.* at 324. Here, Gravity Capital asserted evidence in support of its security interest in Gravity's Petition and when appearing at the forfeiture hearing. Moreover, at least once, this Court has implied in *dictum* that Federal Rule of Civil Procedure 6(b)(1) could be invoked to request an extension of time to file a Section 853(n) petition out

of time. *United States v. Alvarez*, 710 F.3d 565, 567, n. 11 (5th Cir. 2013). Accordingly, *Lamid* is not applicable and does not control here.

Congress codified the statutory construction courts must employ for third-party forfeiture claims, requiring them to "liberally construe[]" Section 853's provisions "to effectuate its remedial purposes." 21 U.S.C. § 853(o). Consistent with Congress' mandate, both the Second and Seventh Circuits have recently addressed curable pleading defects in Section 853(n) proceedings and held, in both cases, that the district courts erred in dismissing third-party forfeiture petitions on technical grounds without granting the claimants leave to amend to cure them.

In *Furando*, 40 F.4th at 578, the Seventh Circuit addressed a "facially deficient" forfeiture petition that was dismissed by the district court without a hearing. Emphasizing "the goal of harmonizing the intended 'liberal[]' construction of § 853 with the need for workability at the district court level," the Seventh Circuit reversed and remanded "for the district court to provide either a hearing or an opportunity to amend the petition" because "the jurisdictional defect" made the basis of the dismissal—the third-party claimant's conclusory pleading of its interests in various property—was "not incurable." *Id*. at 579. Notably, the court deemed leave to amend appropriate irrespective of 21 U.S.C. § 853(n)(2)'s 30-day deadline.

Similarly, in *United States v. Swartz Family Tr.*, 67 F.4th 505, 520 (2d Cir. 2023), the Second Circuit held that "in limited circumstances, it may be appropriate

to permit the petitioner to amend its petition outside the 30-day window." There, the district court dismissed a third-party claimant's petition because it failed to adequately plead its entitlement to certain forfeited assets and denied the claimant leave to amend, reasoning it would be futile under 21 U.S.C. § 853(n)(2). *Id*. at 518-21. The Second Circuit, however, found the "District Court's dispositive reliance on Section 853(n)(2) . . . misplaced." *Id*. at 519.

Instead, it noted that the third-party claimant "timely filed its initial petition, and both the District Court and the Government understood that it intended to pursue its claim to the Asset." *Id*. The court concluded that "[b]ecause the District Court believed that the statutory framework categorically precluded amendment after the 30-day deadline, it does not appear to have considered whether amendment would otherwise have been proper," and vacated the district court's judgment for reconsideration on the issue of amendment. *Id*.; *see also United States v. Daugerdas*, 892 F.3d 545, 558 (2d Cir. 2018) (permitting amendment to clarify interest in forfeited accounts); *but see United States v. Sanchez*, No. 22-11923, 2023 WL 5844958, at \*5 (11th Cir. Sept. 11, 2023) (holding district court did not abuse discretion "when it enforced this congressionally prescribed, 'mandatory' thirty-day window and denied leave to amend.").[2]

---

[2] The third-party claimant in *Sanchez* has filed a Petition for Writ of Certiorari in the United States Supreme Court, Case No. 23-1050. The Court has requested a response to the Petition which is due May 13, 2024.

Consistent with *Furando* and *Swartz*, and this Court's longstanding rule that innocent misnomer should never defeat the merits of a party's claim, Gravity Capital's misnomer should not be dispositive. It is undisputed that Gravity's Petition contained exhibits evidencing Gravity Capital's interest in the Tomball Property. ROA.24-20039.804. It is also undisputed that neither Tiras nor the Government "indicated that there was any confusion as to what entity was suing them, and they never challenged the identity of [Gravity]" until *after* the forfeiture hearing. *Chen v. Breckenridge Estates Homeowners Ass'n, Inc.*, 227 S.W.3d 419, 421 (Tex. App.— Dallas 2007, no pet.).

On the contrary, the Government and Tiras both joined Gravity in seeking court approval to sell the Tomball Property during the pendency of the action and then authorized Gravity to be responsible for marketing and selling the property, including entering into contracts with two potential buyers, coordinating sale issues with two title companies, and negotiating a resolution of the HOA's last-minute lien to facilitate the final closing. ROA.24-20039.1035-1037. The Government and Tiras thus benefited from Gravity's extensive efforts to find a buyer and navigate substantial obstacles to closing the sale and cannot in good faith maintain that they were confused as to Gravity's interests in the same property. As such, allowing Gravity Capital to cure its misnomer is entirely consistent with the legislative intent and purpose of 21 U.S.C. § 853(n).

But even if the Court finds that leave to amend is inappropriate or time-barred, Gravity Capital's misnomer was cured by the exhibits attached to Gravity's third-party petition. "Although [forfeiture] proceedings arise in a criminal context, they closely resemble civil proceedings" such that the Federal Rules of Civil Procedure control where applicable, including with respect to the sufficiency of filed pleadings. *United States v. Stone*, 304 Fed. Appx. 334, 336 (5th Cir. 2008) (not designated for publication under 5TH CIR. R. 47.5); *see also United States v. Butt*, 930 F.3d 410, 413 (5th Cir. 2019) (applying Rule 12(b)'s pleading standard to Section 853(n) proceeding.).

Federal Rule of Civil Procedure 10(c) is one such rule. It provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for *all purposes*." FED. R. CIV. P. 10(c) (emphasis added); *see also Davoodi v. Austin Ind. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014). This Court has held that where "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

Moreover, the Rule is (and has been) appropriately invoked in Section 853(n) proceedings. *United States v. Koeln*, No. 4:19-CR-1016 RLW, 2022 WL 93387, at *5-6 (E.D. Mo. Jan. 10, 2022) (considering attached exhibits "in determining whether [the] Petition satisfies § 853(n)(3)'s pleading requirements."); *United States v. Patel*,

No. 16-CR-00584-02 (DRH), 2019 WL 3216654, at *5 (E.D. N.Y. July 19, 2019) (finding "a juxtaposition of Exhibit A attached to the Petition with the statutory pleading requirements shows sufficient compliance to confer standing on the DNA Hotel.").

Rule 10(c)'s "all purposes" terminology means what it says—the contents of an exhibit can be used for *any* purpose, including curing Gravity Capital's misnomer and satisfying the pleading requirements of Section 853(n)(3). Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1327 (4th ed. 2023) ("Because Rule 10(c) expressly provides that a written instrument that is an exhibit becomes part of the pleading for all purposes, the contents of any attached writing must be considered by the court in a wide variety of contexts . . .").

Because the District Court failed to appropriately consider the curative nature of the exhibits attached to Gravity's third-party petition within the confines of Section 853(n), this Court should reverse and remand to allow the District Court to properly consider Gravity Capital's interest in the Tomball Property.

**B.**   **<u>Second Issue</u>: Gravity established *bona fide* lender status sufficient to evade forfeiture of the Tomball Property.**

21 U.S.C. § 853(n) allows a third party with an interest in forfeited property to prevail against the United States' interest if the third party either "has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because [it] . . . was vested in the petitioner

rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture;" or if it "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(A)-(B).

"In evaluating whether a petitioner falls within the classes defined by section 853(n)(6), the property rights asserted by the petitioner are first defined pursuant to state law;" "[w]hether the property interests defined by state law are subject to forfeiture is then evaluated under federal law." *United States v. Brewer*, 591 F.Supp.2d 864, 868 (N.D. Tex. 2008). A district court's ruling on § 853(n)(6)(B)'s application (or lack thereof) is a question of law reviewed *de novo. United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012).

In enacting § 853(n)(6)(B), "Congress . . . cho[]se to take the good faith purchaser doctrine in UCC § 2-403 and codify it . . ." *United States v. McCorkle*, 143 F.Supp.2d 1311, 1325 (M.D. Fla. 2001). The Texas legislature similarly codified the good faith purchaser doctrine at Section 13.001 of the Texas Property Code. *Abest Holdings, LLC v. Fort Worth Mar-G, Ltd.*, No. 10-18-00161-CV, 2021 WL 2252351, at *10 (Tex. App.—Waco June 2, 2021, no pet.) ("Section 13.001 of the Property Code is the codification of the bona-fide purchaser doctrine.").

Both § 853(n)(6)(B) and § 13.001 protect secured lenders, including mortgagees. *United States v. Herbawi*, 972 F. Supp. 171, 173 (W.D.N.Y. 1997); *Noble Mortg. & Inv., LLC v. D & M Vision Inv., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Under section 13.001, a lender can be a bona fide mortgagee, if the lender takes a lien in good faith, for valuable consideration, and without actual or constructive notice of outstanding claims.").

Courts addressing Section 853(n)(6)(B)'s exemption have allowed third-party claimants to defeat forfeiture where "(1) he or she is a bona fide purchaser of value for such property, and (2) at the time of the bona fide purchase, he or she was reasonably without cause to believe that the property was forfeitable pursuant to its connection with the defendant's illegal actions." *United States v. Armstrong*, No. 05-130, 2007 WL 7335173, at *2 (E.D. La. June 1, 2007).

The first element necessary to attain *bona fide* purchaser status is the acquisition of property "in good faith, for value." *Id*.; *see also United States v. White*, 306 Fed. Appx. 838, 840 (5th Cir. 2007) (not designated for publication under 5TH CIR. R. 47.5). Gravity readily checks this box—it entered into the Loan with the Trust and disbursed $360,590 in proceeds in return for a security interest in the Tomball Property. ROA.24-20039.1257:12-22; *In re Harydzak*, 406 B.R. 499, 511 (Bankr. S.D. Tex. 2009) (finding lender gave "value" by making a loan in exchange for a security interest in real property.); *In re City Nat'l Bank*, 257 S.W.3d 452, 455

(Tex. App.—Tyler 2008, no pet.) (Deeds of trust are recognized property interests under Texas law.). There is also no dispute that Gravity entered into the Loan with the Trust in "good faith" and at arm's length. *See United States v. Reckmeyer*, 836 F.2d 200, 207 (4th Cir. 1987) ("Congress intended to permit general creditors who give value to the forfeited estate in an arm's-length transaction to recover.").

The second element—Gravity's unawareness that the Tomball Property may be subject to forfeiture—was equally established. Gravity conducted its due diligence in early 2021 and entered into the Loan in <u>February of 2021</u>. ROA.24-20039.591. <u>Davis was not indicted for PPP fraud until December 8, 2021, and even then, the Indictment was filed under seal</u>. ROA.24-20039.24-36; *c.f. United States v. Timley*, 507 F.3d 1125, 1131 (8th Cir. 2007) (holding attorney with lien was "not a bona fide purchaser for value because he acquired his interest over one month after a federal grand jury indicted" the defendant.). On these facts alone, Gravity was "reasonably without cause to believe that the [Tomball] [P]roperty was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).

Additionally, Gravity's evidence at the hearing—which was not contradicted—confirms it had no actual or constructive knowledge regarding the Government's investigation into Davis for PPP fraud at any relevant period:

Q:     Did Gravity have any knowledge at that time that Mr. Davis had a criminal background with prior convictions?

A:     No.

Q:     Did Gravity have any knowledge at this time that the subject
       property, the Tomball property secured by the deed of trust might
       be subject to forfeiture?

A:     No.

Q:     Was Gravity aware of any facts which may have raised red flags
       about the possibilities of a government forfeiture coming down
       the road?

A:     No.

ROA.24-20039.1258:17:22-18:2.

Section 853(n)(6)(B) does not require more, but the Government argues it

does. Specifically, the Government argued Gravity should have done more due

diligence that could have revealed Davis's *prior* federal conviction. This, however,

has no bearing on whether Gravity was "reasonably without cause" to suspect that

the *Tomball Property* could be subject to forfeiture. *United States v. Galemmo*, 661

Fed. Appx. 294, 301 (6th Cir. 2016) (unpublished) (Moore, J., concurring)

(recognizing the Section 853(n)(6)(B) test as "property-specific."); *United States v.*

*Rackmeyer*, 836 F.2d 200, 204-05 (4th Cir. 1987) (holding knowledge that even

some property may be subject to forfeiture does not mean that a third-party claimant

should "conclude that all property owned by [the defendant] was forfeitable.");

*McCorkle*, 143 F. Supp. 2d at 1325 (holding knowledge of borrower's prior felonies

was immaterial).

Because Gravity Capital established *bona fide* purchaser status at the forfeiture hearing, the District Court erred in denying its third-party claim and ordering the Tomball Property forfeited to the Government.

C.    **Third Issue: The District Court erred in holding that Tiras had a forfeiture-exempt interest in the Tomball Property.**

The District Court also erred in holding Tiras had a valid interest in the Tomball Property under the forfeiture statute. Tiras asserts an interest in the property sufficient to defeat forfeiture under Section 853(n)(6)(A), but this provision requires that a third party's interest vest prior to the time of the defendant's wrongdoing at issue in the criminal action. Tiras domesticated his Nevada judgment lien against Davis in Texas in August 2015, but this judgment was against Davis, not the Tomball Property, and did not vest in the property before Davis's PPP scheme in 2020. ROA.24-20039.177-179. Indeed, Davis used the PPP funds to subsequently purchase the property on behalf of the Trust, and Tiras's judgment lien could not have vested in the property at the time of Davis's relevant scheme.

In addition, Tiras's judgment lien did not attach to the Tomball Property under Texas state property law—the law of the situs of the property. *White*, 306 Fed. Appx. at 840. Tiras is a judgment creditor who domesticated and abstracted a Nevada state court judgment in Texas. ROA.24-20039.521-523. A judgment lien attaches to a judgment debtor's property when an abstract is recorded and indexed against the judgment debtor. TEX. PROP. CODE § 52.001. It is a fundamental tenant of Texas

property law, however, that abstracted judgment liens only attach to property owned *by the judgment debtor. Gaona v. Gonzales*, 997 S.W.2d 784, 786 (Tex. App.— Austin 1999, no pet.); *Wise v. Conklin*, No. 01-13-00840-CV, 2015 WL 1778612, at *4 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015, no pet.).

It is undisputed that Davis did not own the Tomball Property; the Trust did. ROA.24-20039.801. It is also undisputed that Tiras's judgment was not abstracted against the Trust. ROA.24-20039.521-523. The District Court held this distinction immaterial because it determined "the Trust is a self-settled spendthrift trust, and thus is a sham trust." ROA.24-20039.802. But even still, this does not mean that Tiras's judgment lien attached to the Tomball Property.

On the contrary, this Court squarely held otherwise in *In re Goff*, 812 F.2d 931 (5th Cir. 1987). In *Goff*, the Court addressed whether a bank's judgment lien against judgment debtors, individually, attached to real property they owned in trust. *Id*. at 932. There, the judgment debtors were the sole beneficiaries of a trust which contained a "spendthrift" clause.[3] *Id*. The bank abstracted its judgment against the judgment debtors and argued it also attached to the real property owned by their trust. *Id*. The bankruptcy and district courts disagreed, holding that the judgment

---

[3] "In general, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors." *In re Bradley*, 501 F.3d 421, 428 (5th Cir. 2007) (quoting *In re Moody*, 827 F.2d 719, 723 (5th Cir. 1988)).

debtors only had equitable title to the real property owned by the trust such that the judgment lien did not attach to the real property. *Id*.

On appeal, the Court noted that "[t]he judgment lien attaches only to real property in which the judgment debtor has legal title; it does not attach to property in which the debtor has only equitable title." *Id*. at 933. The Court then framed the issue as whether the judgment debtors held legal, or equitable title to the real property in trust. *Id*. If the trust were valid, the judgment debtors would have equitable title only in the real property and the bank's lien would not attach. *Id*.

The bank argued "the trust was void from its inception as a self-settled spendthrift trust." *Id*. The Court recognized that while the bank may be entitled to pierce the trust, the fact that it was a self-settled spendthrift trust did <u>not</u> invalidate it *ab initio*. *Id*. And "[b]ecause the trust was not void, the [judgment debtors] held only equitable title to the real property in the trust and [the bank's] lien did not attach." *Id*.; *see also Matter of Shurley*, 115 F.3d 333, 341 (5th Cir. 1997) (explaining that in *Goff*, the Court "held . . . that a judgment lien against the debtor did not create a secured claim against the assets of the trust."). Under *Goff*, the District Court erred by holding that Tiras' judgment lien attached to the Tomball Property.

It was also error for the District Court to invalidate the Trust entirely without considering whether the spendthrift provision was independently severable. Texas courts have routinely favored invalidation of spendthrift clauses from otherwise

valid trusts as opposed to invalidation of the trust instrument in its entirety. *In re Chambers*, 384 B.R. 460, 467 (Bankr. E.D. Tex. 2008); *Fewell v. Republic Nat. Bank of Dallas*, 513 S.W.2d 596, 598 (Tex. App.—Eastland 1974, writ ref'd n.r.e.); *Wils v. Robinson*, 934 S.W.2d 774, 779 (Tex. App.—Houston [14th Dist.] 1996), vacated pursuant to settlement, 938 S.W.2d 717 (Tex. 1997).

Here, the Trust has a successor beneficiary—Spencer Winston Ruby. ROA.24-20039.543. So, while Davis's creditors may have been able to attach to his interest in the trust corpus, this "does not render the spendthrift provision void or ineffective as to the other beneficiaries of the" Trust. *Chambers*, 384 B.R. at 467; *see also* TEX. PROP. CODE § 112.035(d) (providing that a spendthrift provision "does not prevent the settlor's creditors from satisfying claims from the *settlor's interest* in the trust estate.") (emphasis added). Accordingly, Tiras could not demonstrate that his judgment lien attached to the Tomball Property.

**D.** <u>Fourth Issue</u>**: the District Court erred by preserving Tiras's interest in the Tomball Property despite forfeiting it to the Government.**

21 U.S.C. § 853(n)(7) provides that "[f]ollowing the court's disposition of all petitions filed under this subsection . . . the United States shall have *clear title* to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." (emphasis added). Section 853(n)(7) extinguishes any third-party interests if property is forfeited to the government; no third-party's interest is preserved. *United States v. Hall*, 877 F.3d 676, 684 (6th Cir.

2017) ("Upon entry of an order of forfeiture and disposition of any petitions by the court, 'clear title' to the seized property passes to the United States."); *United States v. Hentz*, No. C.R.A. 90-00276-03, 1996 WL 355327, at *4 (E.D. Pa. June 20, 1996) ("the Court concludes that the Government has met its obligations under 21 U.S.C. § 853 and that any interest Annette Hentz may have had in the Elbo Lane property has been *entirely extinguished* pursuant to § 853(n)(7).") (emphasis added); Wright & Miller, 3 FED. PRAC. & PROC. CRIM. § 574 (5th ed. 2023) ("if all claims are denied following a hearing, and the court enters a final order of forfeiture under Rule 32.2(c)(2), all third-party rights are extinguished.").

While the District Court found Tiras established a "valid lien on the Tomball Property," it nonetheless held Tiras' lien did not survive forfeiture under 21 U.S.C. § 853(a)(1). ROA.24-20039.802. And because Tiras did not "satisfy either § 853(n)(6)(A) or (B)," as a matter of law, Tiras could not "prevail in the ancillary proceeding," either in whole or in part. *Holy Land*, 722 F.3d at 684-85; 21 U.S.C. § 853(n)(7).

Nonetheless, the District Court preserved Tiras' interest "in the event of any sale of the Tomball Property." ROA.24-20039.802-803. Its holding cannot be reconciled with Section 853(n)(7)'s pronouncement that "clear title" vests in the government if forfeiture is ordered following the resolution of a third-party petition. "Clear title" means that the government's interest in the forfeited property is absolute

and that all third-party interests are extinguished. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Razzouk*, No. 1:18-MC-1793 (ARR), 2018 WL 4210137, at *5, n. 5 (E.D. N.Y. Sept. 4, 2018) (Recognizing that had "National Union's outstanding petition had already been resolved, the prospective intervenors would have no conceivable interest in the forfeited property."); *United States v. Messino*, 122 F.3d 427, 428 (7th Cir. 1997) ("Once the third-party hearings have been held . . . the government has clear title to the property forfeited.").

True, Tiras and the Government could well come to a side agreement preserving Tiras' interest in the Tomball Property in the event of any sale, but such arrangement is permissible not under the forfeiture statute, but from the government's "policy and practice" of entering into it, should it choose to. *Hall*, 877 F.3d at 684. Because Section 853(n)(7) extinguishes third-party interests as a matter of law following the disposition of ancillary petitions, the District Court erred in preserving Tiras' interest in the Tomball Property "in the event of any sale."

## VI.
## CONCLUSION AND PRAYER

Gravity requests that this Court sustain its four issues on appeal; reverse the District Court's order denying Gravity Capital's forfeiture petition and preserving Tiras' interest in the Tomball Property; and remand the matter for further consistent proceedings. Gravity also requests any other relief to which it may be entitled.

Respectfully submitted,

*/s/ Justin G. Bates*

Rusty J. O'Kane
Texas State Bar No. 24088149
rusty.okane@wickphillips.com
Joseph R. Callister
Texas State Bar No. 24059054
joseph.callister@wickphillips.com
Justin G. Bates
Texas State Bar No. 24131246
justin.bates@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**Counsel for Appellants Gravity Funding, LLC and Gravity Capital, LLC**

# CERTIFICATE OF SERVICE

I certify that on April 23, 2024, a true and correct copy of the foregoing instrument was filed electronically using the ECF filing procedures for the United States Court of Appeals for the Fifth Circuit and served electronically on all counsel pursuant to the ECF filing procedures for the United States Court of Appeals for the Fifth Circuit.

Kenneth M. Krock
Matthew Buschi
Scott Seidl
RAPP & KROCK, P.C.
1980 Post Oak Blvd., Suite 1200
Houston, Texas 77056

*Attorneys for E. Alan Tiras and*
*E. Alan Tiras, P.C.*

Tyler Foster
U.S. ATTORNEY'S OFFICE
Southern District of Texas
800 B. Shoreline Boulevard
Corpus Christi, Texas 78401

-and-

Anthony R. Franklyn
Carmen Castillo Mitchell
U.S. ATTORNEY'S OFFICE
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, Texas 77002

*Attorneys for the United States*
*of America*

/s/ Justin G. Bates
Justin G. Bates

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Fifth Circuit Rule 32 because, according to Microsoft Word, it contains 8,382 words.

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), and Fifth Circuit Rule 32, because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

I further certify that I have made all privacy redactions pursuant to Fifth Circuit Rule 25.2.13, that the electronic submission of this brief is an exact copy of any paper document filed pursuant to Fifth Circuit Rule 25.2.1, and that this document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Justin G. Bates*
Justin G. Bates